**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division**

**HANS LAUDERBACH,**

           CASE NO.:

 *Plaintiff,*

**v.**

**TRANS UNION, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC.,
EQUIFAX INFORMATION SERVICES
LLC, and AMERICAN EXPRESS
COMPANY,**

 *Defendants.*

_____/

**PLAINTIFF'S COMPLAINT
JURY DEMAND**

1. Plaintiff, Hans Lauderbach (hereinafter "Plaintiff" or "Mr. Lauderbach") brings this action against Defendants Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax") and American Express Company ("AMEX"), for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq. (hereinafter "FCRA").

2. Plaintiff further alleges violation of the Florida Consumer Collection Practices Act, Florida Statute §559.72 et. seq. (hereinafter "FCCPA") against AMEX.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction under 28 U.S.C. § 1331 because this action

arises under the laws of the United States.

4.      Supplemental jurisdiction exists for Plaintiff's FCCPA claims pursuant to 28 U.S.C. §1367. Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

5.      Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Miami-Dade County, Florida.

## **PARTIES**

6.   Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Sarasota County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c), 15 U.S.C. §1692a(3) and Florida Statute §559.55(8).

7.   Trans Union is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

8.   Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

9.   Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

10. Experian is an Ohio corporation incorporated under the laws of the State

of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

11. Equifax is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

12. Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

13. Defendant AMEX is a nationwide corporation that regularly conducts business in the State of Florida or is registered to conduct business in the state of Florida with a principal place of business located at 200 Vesey Street, New York, NY 10285.

14. Defendant AMEX is a "debt collector" within the meaning of Florida Statute §559.55(7).

15. Defendant AMEX uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the consumer reporting agencies, Trans Union, Equifax and Experian, (collectively "credit reporting agencies").

16. These instrumentalities of interstate commerce are largely electronic,

3

written, or telephonic communications which have effects on consumers and their credit reports within the State of Florida.

**STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT**

17. The Fair Credit Reporting Act, 15 U.S.C. §1681 et. seq., was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

18. Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." See 15 U.S.C. §1681(a)(1).

19. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

20. A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. See 15 U.S.C. §1681s-2.

4

21. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." See 15 U.S.C. § 1681(a)(3),(4).

22. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

23. Prior to the 2003 amendments, victims of identity theft were afforded no Special protections under the FCRA. As such, consumer reporting agencies ("CRAs", and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any different than a regular dispute.

24. The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

25. A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. See 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined, the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B). See 15 U.S.C. §§ 1681c-2(c)(2).

26. In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. See 12 C.F.R. § 1022.3(i)(1)(iii)(A).

27. "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." Osada v. Experian Info. Solutions, Inc., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

28. The FCRA requires a credit reporting agency to "follow reasonable

procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

29. The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

30. In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

31. The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

32. The FCRA requirements are important, because they help credit reporting agencies ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

33. If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

34. If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

35. A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

36. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. See 15 U.S.C. §§ 1681o, 1691n.

37. The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person requesting the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3). The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

38. "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. See also Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

39. The FCRA requires credit reporting agencies to "follow reasonable

procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

40. If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall...(i)  promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

41. If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

42.    Under the FCRA, "[t]he term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living

9

which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-

> (A)   credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B)   employment purposes; or
>
> (C)   any other purpose authorized under section 1681b of this title."

U.S.C. § 1681a(d)(1).

43.   The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

*National CRAs and Furnishers Communicate Consumer Disputes and Responses via the E-Oscar Reporting Platform*

44.   The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

45.   To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

46. The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

47. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

48. The National CRAs provide notice of a consumer's dispute to data furnishers in the ACDV format and forward the ACDV to the furnisher through e-OSCAR.

49. If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

50. The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

51. Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

11

52.     Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See https://www.transunion.com/data-reporting/support-teams      (last accessed December 9, 2025).

**The FCCPA**

53.     The FCCPA's goal is to "provide the consumer with the most protection possible." See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

54.     The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." See Fla. Stat. § 559.72(9).

55.     "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." See Fla. Stat. §559.77(2).

56.     As a consumer, The Plaintiff has a private right of action against AMEX pursuant to Florida Statute §559.77(2), which provides that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages . . . not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." (omissions added).

## FACTUAL ALLEGATIONS

57. The Plaintiff is a documented victim of identity theft, having lodged a Police Report recorded in the Police Incident Report dated December 12, 2024 with the Sarasota County Sheriff's Office ("Police Report"), in further support of his identity theft claims, thereby taking all reasonable steps to notify law enforcement authority of the fraudulent activities carried out in his name.

58. Unauthorized third parties unlawfully used the Plaintiff's identity to open two (2) American Express fraudulent tradelines to obtain credit without Plaintiff's knowledge, authorization, or consent. Plaintiff has no connection to these fraudulent accounts. The resulting tradelines are unauthorized, fraudulent, and materially detrimental to the Plaintiff's credit history.

**Disputes with Trans Union and AMEX**

59. The Plaintiff sent a dispute letter to Trans Union, which Trans Union received on October 14, 2025 ("Trans Union Dispute Letter"). The Plaintiff disputed American Express Partial Account Number ****2395**** and American Express Partial Account Number ****2392**** and demanded these accounts be deleted from his credit report as each tradeline was unauthorized and fraudulent. Plaintiff included his driver's license as identification in the Trans Union Dispute Letter and provided the Police Report. The Police Report specifically references an American Express account being opened without Plaintiff's authorization with fraudulent charges on that account and Plaintiff having notified American Express

that the charges were fraudulent. Plaintiff further advised in the Police Report that a further fraudulent account existed.

60. In response, on October 16, 2025, Transunion provided the Plaintiff with the dispute results for the American Express tradeline associated with disputed American Express Partial Account Number ****2395****, stating that Transunion was not blocking the information identified in the Plaintiff's request at that time. Upon reviewing a subsequent Trans Union credit report dated February 9, 2026, the Plaintiff observed that the fraudulent tradeline was wrongfully verified and continued to appear on the credit report.

61. In response, on October 16, 2025, Transunion provided the Plaintiff with the dispute results for American Express tradeline associated with disputed American Express Partial Account Number ****2392****, stating that Transunion was not blocking the information identified in the Plaintiff's request at that time. Upon reviewing a subsequent Trans Union credit report dated February 9, 2026, the Plaintiff observed that the fraudulent tradeline was wrongfully verified and continued to appear on the credit report.

62. The persistence of the disputed American Express tradelines remaining on Plaintiff's Trans Union credit report after providing the Trans Union Dispute Letter specifically referencing fraudulent transactions related to his American Express accounts demonstrates Trans Union's failure to conduct a reasonable and meaningful investigation. Additionally, it demonstrates Amex's failure to conduct its own reasonable and meaningful investigation.

**Disputes With Experian and AMEX**

63. The Plaintiff sent a dispute letter to Experian, which Experian received on November 16, 2025 ("Experian Dispute Letter"). The Plaintiff disputed American Express Account Number Ending ****23922693 and American Express Account Number Ending *****23956073 and demanded these accounts be deleted from his credit report as each tradeline was unauthorized and fraudulent. Plaintiff included his driver's license as identification in the Experian Dispute Letter and provided the Police Report. The Police Report specifically references an American Express account being opened without Plaintiff's authorization with fraudulent charges on that account and Plaintiff having notified American Express that the charges were fraudulent. Plaintiff further advised in the Police Report that a further fraudulent account existed.

64. To date no response has been received from Experian to Plaintiff for the American Express tradeline associated with disputed American Express Account Number Ending ****23922693. Upon reviewing a subsequent Experian credit report dated January 2, 2026, the Plaintiff observed that the fraudulent tradeline was wrongfully verified and continued to appear on the credit report.

65. To date no response has been received from Experian to Plaintiff for the American Express tradeline associated with disputed American Express Account Number Ending ****23956073. Upon reviewing a subsequent Experian credit report dated January 2, 2026, the Plaintiff observed that the fraudulent tradeline was wrongfully verified and continued to appear on the credit report.

15

66. The persistence of the disputed American Express tradelines remaining on Plaintiff's Experian credit report after providing the Experian Dispute Letter specifically referencing fraudulent transactions related to his American Express accounts demonstrates Experian's failure to conduct a reasonable and meaningful investigation. Additionally, it demonstrates Amex's failure to conduct its own reasonable and meaningful investigation.

**Disputes With Equifax and AMEX**

67. The Plaintiff sent a dispute letter to Equifax, which Equifax received on October 16, 2025 ("Equifax Dispute Letter"). The Plaintiff disputed American Express Partial Account Number *2693 and American Express Partial Account Number *6073 and demanded these accounts be deleted from his credit report as each tradeline was unauthorized and fraudulent. Plaintiff included his driver's license as identification in the Equifax Dispute Letter and provided the Police Report. The Police Report specifically references an American Express account being opened without Plaintiff's authorization with fraudulent charges on that account and Plaintiff having notified American Express that the charges were fraudulent. Plaintiff further advised in the Police Report that a further fraudulent account existed.

68. In response, on October 22, 2025, Equifax provided the Plaintiff with the dispute results for the American Express tradeline associated with disputed Partial Account Number *2693, stating that Equifax was not blocking the information identified in the Equifax Dispute Letter at that time. Thereafter, upon reviewing a

subsequent Equifax credit report dated January 2, 2026, the Plaintiff observed that the fraudulent tradeline was wrongfully verified and continued to appear on the credit report.

69. In response, on October 22, 2025, Equifax provided the Plaintiff with the dispute results for the American Express tradeline associated with disputed Partial Account Number *6073, stating that Equifax was not blocking the information identified in the Plaintiff's request at that time. Thereafter, upon reviewing a subsequent credit report dated January 2, 2026, the Plaintiff observed that the fraudulent tradeline was wrongfully verified and continued to appear on the credit report.

70. The persistence of the disputed American Express tradelines remaining on Plaintiff's Equifax credit report after providing the Equifax Dispute Letter specifically referencing fraudulent transactions related to his American Express accounts demonstrates Experian's failure to conduct a reasonable and meaningful investigation. Additionally, it demonstrates Amex's failure to conduct its own reasonable and meaningful investigation.

**Plaintiff's Damages**

71.    Defendants' derogatory and inaccurate reporting of the above-described fraudulent tradelines, account information and inquiries on Plaintiff's credit reports negatively reflects upon Plaintiff's financial obligations, credit score and credit worthiness to existing and potential creditors.

17

72.     Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purpose of standing under Article III. See *Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); See *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); See *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); See *Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); See *Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); See *Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); See *Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores ... are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, See *Coulbertson v. Experian Info. Sols., Inc.*,

18

No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, *Coulbertson* has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

73.    As a result of Defendants' conduct, including the continued publication of false identifying information or tradelines, Plaintiff suffered concrete injuries, including but not limited to emotional distress and manifestations of emotional distress associated with fraudulent information remaining in his credit files, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, expenses associated with credit report disputes and the deprivation of his statutory rights to accurate reporting and meaningful dispute resolution. These injuries are concrete and particularized and confer standing under Article III. See *Coulter v. Sagestream, LLC*, 501 F.Supp.3d 298 (2020); *Norman v. Trans Union, LLC*, 669 F.Supp.3d 351 (2023); *Chaitoff v. Experian Information Solutions, Inc.*, 79 F.4th 800 (2023).

### COUNT I - VIOLATIONS OF 15 U.S.C. §1681c-2
### AGAINST TRANS UNION

74.    Plaintiff incorporates by reference paragraph 1, 4-8, 15-52, 57-62 and 71-73 as if fully stated herein.

75.    During the relevant timeframe, Trans Union received Plaintiff's disputes which requested a block of the fraudulent information.

19

76.     Plaintiff disputed the information on his Trans Union credit report, identified himself, advised Trans Union of the information being fraudulent, furnished Trans Union with a copy of his police report and requested that Trans Union block the fraudulent information.

77.     Rather than block the fraudulent information, Trans Union negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed information from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with a police report concerning Plaintiff's identity theft, in violation of Section 1681c-2.

78.     Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

79.     Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT II - VIOLATIONS OF 15 U.S.C. §1681i
### AGAINST TRANS UNION

20

80.    Plaintiff incorporates by reference paragraphs 1, 4-8, 15-52, 57-62 and 71-73 as if fully stated herein.

81.    During the relevant time frame, Trans Union received Plaintiff's disputes which requested that the fraudulent information be removed from his credit file.

82.    Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

83.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT III - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST TRANS UNION

84.    Plaintiff incorporates by reference paragraphs 1, 4-8, 15-52, 57-62 and 71-73 as if fully stated herein.

21

85.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

86.     After receiving Plaintiff's disputes, Trans Union was placed on notice that it was reporting fraudulent information, yet Trans Union continues to include the fraudulent information in Plaintiff's credit file.

87. Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

88.     In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT IV - VIOLATIONS OF 15 U.S.C. §1681c-2
### AGAINST EXPERIAN

89.     Plaintiff incorporates by reference paragraphs 1, 4-6, 9, 10, 15-52, 57, 58, 63-66 and 71-73 as if fully stated herein.

90.    During the relevant timeframe, Experian received Plaintiff's disputes which requested a block of the fraudulent information.

91. Plaintiff disputed the information on his Experian credit report, identified himself, advised Experian of the information being fraudulent, furnished Experian with a copy of his police report, and requested that Experian block the fraudulent information.

92.    Rather than block the fraudulent information, Experian negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed information from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with a police report concerning Plaintiff's identity theft, in violation of Section 1681c-2.

93.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

94.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

95. WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as

23

permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT V - VIOLATIONS OF 15 U.S.C. §1681i
### AGAINST EXPERIAN

96.    Plaintiff incorporates by reference paragraphs 1, 4-6, 9, 10, 15-52, 57, 58, 63-66 and 71-73 as if fully stated herein.

97. During the relevant time frame, Experian received Plaintiff's disputes which requested that the fraudulent information be removed from his credit file.

98.    Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

99.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

100.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

24

## COUNT VI - VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EXPERIAN

101.    Plaintiff incorporates by reference paragraphs 1, 4-6, 9, 10, 15-52, 57, 58, 63-66 and 71-73 as if fully stated herein.

102.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

103.    After receiving Plaintiff's disputes, Experian was placed on notice that it was reporting fraudulent information, yet Experian continues to include the fraudulent information in Plaintiff's credit file.

104.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

105.    In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances

## COUNT VII - VIOLATIONS OF 15 U.S.C. §1681c-2
## AGAINST EQUIFAX

25

106.    Plaintiff incorporates by reference paragraphs 1, 4-6, 11, 12, 15-52, 57, 58, and 67-73 as if fully stated herein.

107.    During the relevant timeframe, Equifax received Plaintiff's disputes which requested a block of the fraudulent information.

108.    Plaintiff disputed the information on his Equifax credit report, identified himself, advised Equifax of the information being fraudulent, furnished Equifax with a copy of his police report, and requested that Equifax block the fraudulent information.

109.    Rather than block the fraudulent information, Equifax negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed information from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with a police report concerning Plaintiff's identity theft, in violation of Section 1681c-2.

110.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

111.    Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive

26

damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VIII - VIOLATIONS OF 15 U.S.C. §1681i AGAINST EQUIFAX

112. Plaintiff incorporates by reference paragraphs 1, 4-6, 11, 12, 15-52, 57, 58, and 67-73 as if fully stated herein.

113. During the relevant time frame, Equifax received Plaintiff's disputes which requested that the fraudulent information be removed from his credit file.

114. Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

115. Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

116. Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

27

## COUNT IX - VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EQUIFAX

117.    Plaintiff incorporates by reference paragraphs 1, 4-6, 11, 12, 15-52, 57, 58, and 67-73 as if fully stated herein.

118.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

119.    After receiving Plaintiff's disputes, Equifax was placed on notice that it was reporting fraudulent information, yet Equifax continues to include the fraudulent information in Plaintiff's credit file.

120.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

121.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT X - VIOLATIONS OF 15 U.S.C. §1681s-2(b)
## AGAINST AMEX

28

122. Plaintiff incorporates by reference paragraphs 1, 4, 5, 6, 13-52, and 57-73 as if fully stated herein.

123. AMEX is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

124. AMEX violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies.

125. As a result of AMEX's violations of the FCRA, Plaintiff has been damaged.

126. AMEX negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

127. Additionally, AMEX committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

128. Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

129. WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against AMEX in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XI - VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST AMEX

29

130. Plaintiff incorporates by reference paragraphs 1, 4, 5, 6, 13-16, and 44-73 as if fully stated herein.

131. At all relevant times to this action, AMEX is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

132. After Plaintiff placed AMEX on notice that his accounts were used fraudulently, AMEX had no reasonable basis to continue to seek to collect illegitimate or fraudulent debts.

133. AMEX violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when AMEX knew that the debt was not legitimate or asserting the existence of some other legal right when AMEX knew that right did not exist.

134. Specifically, AMEX communicated false information that it had a legitimate right or some other non-existent right to collect from Plaintiff on a debt arising from fraud.

135. "Any person who fails to comply with any provision of §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the

non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

136.   As a result of AMEX's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing AMEX's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against AMEX in the form of actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: 4/21/2026                    Respectfully submitted,

                                     SHARMIN & SHARMIN, P.A.

                                    /s/ *Eyal S. Eisig*
                                    Eyal S. Eisig, Esq.
                                    eyal@sharminlaw.com
                                    FBN: 109438
                                    830 North Federal Highway
                                    Lake Worth Beach, FL 33460
                                    Main: 561-655-3925
                                    Fax: (844) 921-1022
                                    *Attorneys for Plaintiff*

31